UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

VINCENT HEGAR,

                         Plaintiff,

v.

R. LUCAS,

                         Defendant.

_____/

Case No. 19-12084
Honorable Bernard A. Friedman
Magistrate Judge David R. Grand

**REPORT AND RECOMMENDATION ON CROSS-MOTIONS
FOR SUMMARY JUDGMENT (ECF Nos. 38, 40)**

Plaintiff Vincent Hegar ("Hegar") contends that while he was an inmate at the Michigan Department of Corrections' Cooper Street Correctional Prison, defendant Corrections Officer Richard Lucas ("Lucas") botched his drug test sample and lied at a disciplinary hearing about the testing procedures he followed. As a result, Hegar was found guilty of substance abuse. At the time, the Parole Board had approved paroling Hegar to the community. However, following his substance abuse conviction, the Parole Board changed the terms of Hegar's parole, requiring him to commence his parole at the Detroit Reentry Center (the "DRC"), which Hegar asserts "was the equivalent of being confined in prison." (ECF No. 29, PageID.117.)

Ultimately, the Honorable James Jamo of the Ingham County Circuit Court reversed Hegar's substance abuse conviction, finding it was not based on substantial evidence because "record evidence casts serious doubts on C/O Lucas's veracity and MDOC's handling of surveillance video" related to the Lucas's processing of the samples. (ECF No. 38-2.) Hegar then filed the instant action pursuant to 18 U.S.C. § 1983, claiming that because he was "required to serve additional confinement in prison based upon a false misconduct," his Fourteenth Amendment and Eighth Amendment rights were violated. (ECF No. 29, PageID.118-20.)

Presently before the Court are the parties' cross-motions for summary judgment.  (ECF Nos. 38, 40.)[1]  While this Court shares Judge Jamo's concerns, for the reasons discussed below, Hegar's instant claims nevertheless lack merit.  Accordingly, Hegar's motion should be denied, Lucas's motion should be granted, and this case should be dismissed.

## I.    Factual Background

### A.    *Substance Abuse Misconduct*

On September 25, 2017, the MDOC ordered Hegar (who, at the time, was an inmate at the Cooper Street Correctional Prison), along with nine other prisoners, to submit to a random drug test.  (ECF No. 29, PageID.113.)  Lucas administered the drug test in an area known as the control center.  (ECF No. 40-2, PageID.235.)  Hegar alleges that Lucas left urine samples uncovered and unattended on a ledge in the control center in violation of standard chain of custody procedures. (ECF No. 29, PageID.113.)  He also alleges that Lucas used the wrong forms for processing the samples, resulting in him opening sealed bags and boxes of urine samples, unsealing the samples, and placing new labels on the samples.  (*Id*. at PageID.114.)  Lucas, however, does "not recall breaking any seals due to the wrong paperwork."  (ECF No. 38-2, PageID.177.)  Although the actual results are not part of the record,[2] at some point subsequent to September 25, 2017, a sample attributed to Hegar tested positive for Suboxone.  (ECF No. 29, PageID.113.)

On October 13, 2017, Lieutenant Lisa Bozung wrote a Class I Misconduct Report against Hegar, charging him with "Substance Abuse" as a result of Hegar's positive drug test.[3]  (ECF No.

---

[1] Pursuant to 28 U.S.C. § 636(b), the Honorable Bernard A. Friedman referred the case to the undersigned for all pretrial purposes.  (ECF No. 3.)

[2] The Misconduct Report indicates "See attached Phamatech Drug Test Report and Specimen sheet," but neither party placed the report in the record.  (ECF No. 38-7, PageID.191.)

[3] The Misconduct Report indicates that Hegar tested positive for Buprenorphine, which is a

38-7.)  On October 23, 2017, Hearing Officer Michael Marutiak conducted a hearing on the

misconduct charge.  (ECF No. 40-4.)  Officer Marutiak initially postponed the hearing to determine

whether video footage from the control room was available, stating:

> The issue presented is essentially whether prisoner Hegar's 9/25/17 urine
> sample was adequately protected or whether it could have been mixed-up
> with that of another prisoner.  HO agreed in a spirit of complete fairness and
> completeness of the record to take an extra measure to see if any relevant
> video was available, even though the video was not requested until the time
> of the prisoner's statement to the [Hearing Investigator].  The charged
> prisoner voluntarily waived the normal time frame so additional
> information could be sought regarding the video.  [Hearing Investigator]
> Flynn was present for the waiver.

(ECF No. 40-4, PageID.245.)

On November 6, 2017, Hearing Officer Marutiak reconvened the hearing.  (*Id*.)  Marutiak

noted that the video from the control room no longer existed.  (*Id*.)  Marutiak considered the

evidence presented (including statements from Hegar, Lucas, and a prisoner witness, along with

the lab reports) and found Hegar guilty of substance abuse.  (*Id*., PageID.244-45.)

On November 19, 2017, Sergeant J. Carter submitted the following Memorandum to

Hearing Officer Marutiak:

> On 9-25-17 Officer Lucas advised Prisoner Hegar and 7 other Prisoners[4] to
> provide a urine sample.  After collecting the urine sample from prisoner
> Hegar I noticed Officer Lucas had swab test kit forms.  I advised Officer
> Lucas to use the correct urine forms.  Officer Lucas then broke the seal and
> replaced with proper forms.

(ECF No. 38-6, PageID.190.)

Thereafter, on or about November 27, 2017, Hegar requested a rehearing on his misconduct

---

medication used to treat opioid addiction.  *See* www.drugs.com/buprenorphine.html.  Suboxone
contains buprenorphine.  *Id*.

[4] Hegar states that Lucas tested him and "up to nine other inmates."  (ECF No. 29, PageID.113.)
The number of prisoners tested does not affect the Court's analysis.

finding.  (ECF No. 40-6.)  The MDOC declined the request.  (*Id*.)  Hegar continued to challenge the misconduct report through the MDOC's administrative process with an appeal to the Ingham County Circuit Court.  (ECF No. 38-2.)

On December 14, 2018, the Honorable James S. Jamo of the Ingham County Circuit Court issued an Order Reversing the MDOC's Decision on Hegar's Misconduct Charge.  (ECF No. 38-2.)  The issue before Judge Jamo was whether the MDOC's decision was supported by substantial evidence in accordance with MCL § 791.255(3); he found it was not:

> [O]n November 19, 2017 – ten days after the Hearing Officer rendered a decision – an internal memorandum from a Sgt. Carter acknowledged that he was present for CO Lucas's drug testing of Appellant and he observed C/O Lucas break the seals due to initially using the incorrect paperwork. Furthermore, the seal breaking, and resealing was done at Sgt. Carter's direction.  This statement directly contradicts C/O Lucas's rendition of the testing and corroborates at least part of what Appellant alleges took place. Because C/O Lucas's testimony was the only piece of evidence relied upon by the Hearing Officer regarding how C/O Lucas conducted Appellant's drug test, and because C/L Lucas's testimony appears to be untruthful (whether intentionally or not), there is not substantial evidence on the record to support a clean chain of custody.
>
> * * *
>
> The record in this case features a request for the relevant surveillance footage via email dated October 16, 2017 with a response dated October 18, 2017 indicating that the footage had been overwritten.  Both dates were within 30 days of the September 25, 2017 drug test.  Curiously, a second request for the video was made via email on October 27, 2017 – more than 30 days after the date of the drug test – and was responded to on October 30, 2017 indicating that "MDOC only retains video for 30 calendar days."

(*Id*. at PageID.177-78.)

Thus, Judge Jamo reversed Hegar's conviction.  (*Id.*, PageID.179.)

B. *Parole*

In the midst of Hegar's drug test and substance abuse misconduct charge, he was being considered for parole.  On September 28, 2017, the MDOC Parole Board voted to parole Hegar,

4

with a "projected parole date" of **March 22, 2018**.  (ECF No. 40-3.)  Hegar's term of parole was to be 15 months long.  (*Id.*)  A Notice of Decision was mailed to Hegar on October 4, 2017.  (*Id.*)  The parties agree that according to this decision, Hegar was to be paroled to his family and the community, although the decision simply states that Hegar's "proposed placement" was "acceptable."  (*Id.*)  The Notice of Decision indicates that one term of Hegar's parole provided, "You must complete an outpatient or residential substance abuse or re-entry program when you are referred by the field agent."  (*Id.*)

On November 22, 2017, the Parole Board suspended Hegar's parole, apparently as a result of the Misconduct Report.  (ECF No. 38-11, PageID.201.)  Ultimately, however, the Parole Board "reinstated" Hegar's March 22, 2018 parole date.  (ECF No. 38-10, PageID.198.)  On February 21, 2018, the MDOC mailed Hegar another Parole Board Notice of Decision.  (ECF No. 38-10.)  The Notice of Decision indicated that Hegar's projected parole date remained **March 22, 2018**, and that his parole would still last 15 months.  (*Id.*)  However, unlike Hegar's initial parole conditions, this one indicated that he was required to reside at the Detroit Reentry Center ("DRC") and complete its Residential Substance Abuse Treatment program ("RSAT").  (*Id.*)

There is no dispute that although placement at the DRC does not offer anywhere near the freedom Hegar's original parole conditions would have offered him, his placement at the DRC was the product of the Parole Board's decision to grant him parole, and constituted a form of parole.  (ECF No. 40-5, PageID.251-52; ECF No. 38-10, PageID.198) ("You must reside in/at DRC-RSAT **upon your release to parole**.") (emphasis added.)  Indeed, Hegar himself asserts that he "**was paroled** on March 22, 2018 **to the Detroit Reentry Center**, where he had to complete 5 months of in-house residential inpatient treatment."  (ECF No. 29, PageID.117) (emphasis added.) Hegar returned to the community on October 17, 2018, which was before Judge Jamo reversed

Hegar's misconduct conviction.  (ECF No. 38-3, PageID.183.)

## II.    Procedural Background

Hegar commenced this civil action on July 16, 2019, and filed his operative third amended complaint on March 20, 2020.  (ECF No. 29.)  Hegar now asserts that "[p]lacement in the Detroit Reentry Center was the equivalent of being confined in prison, in that Plaintiff was required to be confined in the same manner as if he was confined at Cooper Street Facility."  (*Id.*, PageID.117.)  Thus, Hegar contends the time he spent while on parole at the DRC constituted "additional confinement in prison."  (*Id.*, PageID.118.)  Hegar claims that the aforementioned circumstances amount to a violation by Lucas of Hegar's rights under the Fourteenth and Eighth Amendments.  (*Id.*, PageID.117-19.)  Specifically, Hegar asserts due process claims related to (1) Lucas's chain-of-custody procedures, (2) the disciplinary hearing procedures, and (3) the fact that he was required to serve what he characterizes as "additional confinement in prison" based on the false substance abuse charge.  (*Id.*)  Hegar's Eighth Amendment claim is essentially derivative of his due process claims; Hegar asserts that "as a result of" Lucas's alleged misconduct, "he was required to serve additional time in MDOC confinement, all in violation of the Eighth Amendment."  (*Id.*, PageID.119-20.)

On October 10, 2020, Hegar moved for partial summary judgment as to liability on both his Fourteenth Amendment due process claims and his Eighth Amendment claim.  (ECF No. 38.)  Hegar essentially relies on Judge Jamo's findings and his characterization of the time he spent at the DRC as "additional confinement in prison."  Lucas has moved for summary judgment as well, arguing principally that Hegar's Fourteenth and Eighth Amendment claims rest on the faulty premise that the time he spent at the DRC was "confinement in prison," when in fact it was "parole."  (ECF No. 40, PageID.221.)

### III.    Legal Standards

#### A.    Motion for Judgment on the Pleadings

A motion for judgment on the pleadings under Federal Rule of Civil Procedure 12(c) is governed by the same standards applicable to a motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6). *See Lindsay v. Yates*, 498 F.3d 434, 437 n.5 (6th Cir. 2007) ("[T]he legal standards for adjudicating Rule 12(b)(6) and Rule 12(c) motions are the same"). A motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) tests a complaint's legal sufficiency. "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiffs pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. (citing *Twombly*, 550 U.S. at 556). The plausibility standard "does not impose a probability requirement at the pleading stage; it simply calls for enough fact to raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Twombly*, 550 U.S. at 556. Put another way, the complaint's allegations "must do more than create speculation or suspicion of a legally cognizable cause of action; they must show entitlement to relief." *League of United Latin Am. Citizens v. Bredesen*, 500 F.3d 523, 527 (6th Cir. 2007) (emphasis in original) (citing *Twombly*, 550 U.S. at 555-56).

In deciding whether a plaintiff has set forth a "plausible" claim, the Court must accept the factual allegations in the complaint as true. *Id*.; *see also Erickson v. Pardus*, 551 U.S. 89, 94 (2007). That tenant, however, "is inapplicable to legal conclusions. Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," to prevent a complaint from being dismissed on grounds that it fails to comport sufficiently with basic

7

pleading requirements. *Iqbal*, 556 U.S. at 678; *see also Twombly*, 550 U.S. at 555; *Howard v. City of Girard Ohio*, 346 F. App'x 49, 51 (6th Cir. 2009). Ultimately, "[d]etermining whether a complaint states a plausible claim for relief will ... be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Iqbal*, 556 U.S. at 679.

B.    *Motion for Summary Judgment*

Pursuant to Rule 56, the Court will grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Pittman v. Cuyahoga County Dep't of Children & Family Servs.*, 640 F.3d 716, 723 (6th Cir. 2011). A fact is material if it might affect the outcome of the case under governing law. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In determining whether a genuine issue of material fact exists, the Court assumes the truth of the non-moving party's evidence and construes all reasonable inferences from that evidence in the light most favorable to the non-moving party. *See Ciminillo v. Streicher*, 434 F.3d 461, 464 (6th Cir. 2006).

The party seeking summary judgment bears the initial burden of informing the court of the basis for its motion, and must identify particular portions of the record that demonstrate the absence of a genuine dispute as to any material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986); *Alexander v. CareSource*, 576 F.3d 551, 558 (6th Cir. 2009). "Once the moving party satisfies its burden, 'the burden shifts to the nonmoving party to set forth specific facts showing a triable issue.'" *Wrench LLC v. Taco Bell Corp.,* 256 F.3d 446, 453 (6th Cir. 2001) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986)). In response to a summary judgment motion, the opposing party may not rest on its pleadings, nor "'rely on the hope that the trier of fact will disbelieve the movant's denial of a disputed fact' but must make an

8

affirmative showing with proper evidence in order to defeat the motion." *Alexander*, 576 F.3d at 558 (quoting *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479 (6th Cir. 1989)).  Indeed, "'[t]he failure to present any evidence to counter a well-supported motion for summary judgment alone is grounds for granting the motion.'" *Id.* (quoting *Everson v. Leis*, 556 F.3d 484, 496 (6th Cir. 2009)).  "Conclusory statements unadorned with supporting facts are insufficient to establish a factual dispute that will defeat summary judgment." *Id.* at 560 (citing *Lewis v. Philip Morris, Inc.*, 355 F.3d 515, 533 (6th Cir. 2004)).

A moving party with the burden of persuasion who seeks summary judgment – here, Hegar – faces a "substantially higher hurdle." *Arnett v. Myers*, 281 F.3d 552, 561 (6th Cir. 2002).  The evidentiary showing must be so strong as to convince the Court that "no reasonable trier of fact could find other than for [the moving party]." *Calderone v. United States*, 799 F.2d 254, 259 (6th Cir. 1986).  The party with the burden of proof "must show that the record contains evidence satisfying the burden of persuasion and that the evidence is so powerful that no reasonable jury would be free to disbelieve it." *Arnett*, 281 F.3d at 561.  "Accordingly, summary judgment in favor of the party with the burden of persuasion 'is inappropriate when the evidence is susceptible to different interpretations or inferences by the trier of fact.'" *Green v. Tudor*, 685 F. Supp. 2d 678, 685 (W.D. Mich. 2010) (quoting *Hunt v. Cromartie*, 526 U.S. 541, 553 (1999)).

## IV.   Analysis

### A.   *Hegar's Fourteenth Amendment Due Process Claims Fail*

Hegar's Fourteenth Amendment due process claims all center on his allegation that he "had a due process right that he would not be issued a false misconduct by the Defendant that resulted in his confinement being extended based on this false misconduct."  (ECF No. 29, PageID.118.) Hegar also asserts that he possessed a number of other due process rights that were violated in

connection with his misconduct hearing and parole decisions, such as "a due process right that requested exculpatory evidence would be retained until the misconduct hearing," "a due process right that the hearing officer would investigate his claim of innocence and not just rubber-stamp Defendant Lucas," and (3) "a due process right that he would not have a grant of parole suspended based on a false misconduct." (*Id.*) Whether under the more liberal pleading standards that govern Lucas's Rule 12(c) motion, or analyzing the undisputed evidence submitted by the parties, Hegar cannot prevail on these claims.

"To establish a procedural due process claim pursuant to § 1983, plaintiffs must establish three elements: (1) that they have a life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution, (2) that they were deprived of this protected interest within the meaning of the Due Process Clause, and (3) that the state did not afford them adequate procedural rights prior to depriving them of their protected interest." *Hahn v. Star Bank*, 190 F.3d 708, 716 (6th Cir. 1999). Moreover, "the plaintiff must plead and prove that state remedies for redressing the wrong are inadequate." *Victory v. Walton*, 721 F.2d 1062, 1066 (6th Cir. 1983). "A prison disciplinary action does not implicate a liberty interest requiring due process safeguards unless the punishment imposed will 'inevitably' affect the duration of an inmate's sentence or inflict an 'atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life.'" *Briscoe v. Mohr*, No. 19-3306, 2020 WL 1813660, at *2 (6th Cir. Mar. 16, 2020) (quoting *Sandin v. Conner*, 515 U.S. 472, 484, 487 (1995)).

Applying these standards, it is clear that Lucas is entitled to a judgment in his favor because (1) Hegar had no constitutional right to parole, (2) his placement at the DRC was a form of parole, and thus did not extend his custodial sentence beyond that ordered by the sentencing court, and was not an "atypical and significant hardship," and (3) Hegar's challenges to Lucas's chain-of-

custody procedures and the disciplinary hearing do not constitute independent due process causes of action.

i.     *Hegar Had No Constitutional Right to Parole*

In *Kikuchi v. Bauman*, No. 20-1593, 2020 WL 7587156, at *2 (6th Cir. Oct. 22, 2020), the Sixth Circuit Court of Appeals recently explained that "a convicted prisoner . . . has no inherent constitutional right to parole.  []  Further, the laws of Michigan do not create a liberty interest in parole."  2020 WL 7587156, at *2 (citing *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987), *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7 (1979) ("There is no constitutional or inherent right of a convicted person to be conditionally released before the expiration of a valid sentence."), *Sweeton v. Brown*, 27 F.3d 1162, 1164-65 (6th Cir. 1994) (en banc), and *Bell v. Anderson*, 301 F. App'x 459, 461 (6th Cir. 2008).  The court explained, "[w]ithout any right to parole, [an inmate] cannot state a claim that the procedures used by the Michigan Parole Board to evaluate him for parole, or the substantive reasons for the denial of parole itself, violated his right to due process."  *Id.* (citing *Olim v. Wakinekona*, 461 U.S. 238, 250 (1983)).

In *Sweeton*, the Sixth Circuit held that there is no federal due process right to parole. *Sweeton*, 27 F.3d 1162.  Applying U.S. Supreme Court precedent from *Olim*, 461 U.S. 238, and its own precedent in *Inmates of Orient Correctional Institute v. Ohio State Adult Parole Authority*, 929 F.2d 233 (6th Cir. 1991), the court reasoned that "[a]fter *Olim* and *Inmates*, it became clear that procedural statutes and regulations governing parole do not create federal procedural due process rights."  *See id*.  The court further emphasized that the State of Michigan may be required to follow its own procedural statutes and regulations as a matter of state law, "but there is not now any viable legal theory by which Michigan state authorities are required to follow such procedural

rules as a matter of *federal* due process." *Id*. at 1165 (emphasis in original).

As discussed above, the first element of Hegar's due process claim is establishing a "life, liberty, or property interest protected by the Due Process Clause of the Fourteenth Amendment to the United States Constitution." *Hahn*, 190 F.3d at 716. Because Hegar had "no inherent constitutional right to parole," and because "the laws of Michigan do not create a liberty interest in parole," *Kikuchi*, 2020 WL 7587156, at *2, to the extent his due process claim revolves around changes to the terms of his parole, that claim necessarily fails. And here, for the reasons discussed in the next section, the end point of all of Hegar's due process challenges is that his original parole conditions were replaced with ones that required him to reside at the DRC and complete its RSAT program.

### ii.    *Hegar's Placement at DRC Constituted Parole*

Hegar tries to circumvent the foregoing analysis by characterizing his time at the DRC as "extended," "additional," and/or "continued" "confinement in prison," as opposed to "parole." (ECF No. 29, PageID.118.) Perhaps Hegar's most succinct explanation of his argument is his assertion in his response to Lucas's summary judgment motion that he is "not suing the parole board for its action in suspending his parole and placement in DRC," but rather:

> Hegar's challenge is that Lucas['s] writing of a false misconduct and lying about it caused his continued confinement in a prison setting for five additional months after he was released on parole because the original guilty findings were referred to the parole board.

(ECF No. 43, PageID.278.)

But this argument fails three different ways. First, the law is clear that a "prisoner has no constitutional right to be free from false accusations of misconduct." *Jackson v. Hamlin*, 61 F. App'x 131, 132 (6th Cir. 2003). *See also Riley v. Church*, 874 F.Supp. 765, 768 (E.D. Mich. 1994) (citations omitted), aff'd, 81 F.3d 161 (6th Cir. 1996) ("[a] prisoner has no constitutionally

protected immunity from being falsely accused of misconduct. The prisoner only has a right to due process of law during the disciplinary proceedings against him concerning the allegedly false misconduct charges."); *Freeman v. Rideout*, 808 F.2d 949, 953 (2d Cir. 1986) ("Since Freeman was granted a hearing, and was afforded the opportunity to rebut the charges against him, the defendant's filing of unfounded charges did not give rise to a per se constitutional violation under section 1983."). "To the extent that false accusations of misconduct implicate due process concerns, the false charges 'do not constitute a deprivation of constitutional rights where the charges are subsequently adjudicated in a fair hearing.'" *Brown v. McCullick*, No. 18-2226, 2019 WL 5436159, at *4 (6th Cir. Apr. 23, 2019) (quoting *Cromer v. Dominguez*, 103 F. App'x 570, 573 (6th Cir. 2004)).

Second, Hegar had a series of hearings that ultimately resulted in his misconduct conviction being overturned. "A prisoner's right to due process in prison disciplinary proceedings includes the right to: (1) written notice of charges at least twenty-four hours before the disciplinary hearing; (2) an opportunity to call witnesses and present documentary evidence; and (3) a written statement of the evidence relied on and the reasons for the disciplinary action." *Brown*, at *4 (citing *Wolff v. McDonnell*, 418 U.S. 539, 563-66 (1974) (noting, however, that the Constitution does not impose the requirement of confrontation and cross-examination in prison disciplinary hearings). In addition, there must be "some evidence" supporting the hearing officer's decision. *Id.* (citing *Superintendent, Mass. Corr. Inst. v. Hill*, 472 U.S. 445, 455 (1985)). Although the video evidence that Hegar claims would be exculpatory was not produced – a point the Court addresses in more detail below *see infra* at 16-17 – there is no dispute that Officer Marutiak's decision complied with all of these requirements, including that it was based on at least "some evidence," most notably the lab reports. (ECF No. 40-4, PageID.244-45.)

13

Third, the premise of Hegar's argument – that Lucas's conduct caused his continued "confinement in prison," rather than a form of parole he found less desirable – is belied by the facts. To that end, the Court begins with Hegar's admission that he "***was paroled*** on March 22, 2018 ***to the Detroit Reentry Center***, where he had to complete 5 months of in-house residential inpatient treatment." (ECF No. 29, PageID.117) (emphasis added.) Indeed, the undisputed evidence establishes that Hegar went to the DRC pursuant to, and on account of, the Parole Board's February 21, 2018 Notice of Decision. (ECF No. 38-10.)[5] Moreover, even when Hegar was going to be paroled to the community, one condition of that parole was that, "You must complete an outpatient or residential substance abuse or re-entry program when you are referred by the field agent." (ECF No. 40-3.) Hegar presented no evidence whatsoever that he would never have had to complete the DRC RSAT. Also, the operative Notice of Decision indicated that Hegar's projected parole date of March 22, 2018, and projected 15-month term of parole, were identical to the dates indicated in the Parole Board's original decision. Finally, Hegar returned to the community on October 17, 2018, which was *before* Judge Jamo reversed Hegar's misconduct conviction. (ECF No. 38-3, PageID.183.)

In short, there is no material question of fact that Hegar's placement at the DRC was a form of parole, and not an extension of his court-ordered custodial sentence. Thus, Hegar cannot show that he was subjected to punishment that would "inevitably" prolong his custodial sentence or that he suffered an "atypical and significant hardship" as a result of Lucas's alleged conduct. *Sandin*,

---

[5] In his response to Lucas's summary judgment motion, Hegar attaches a description of the DRC that, according to him, proves his time there was not part of his parole, but rather an extension of his confinement. (ECF No. 43-2.) This document fails to raise a material question of fact, though, because it expressly states that DRC "continues to house parolees (male and female), probationers (male) and prisoners (male) who are required, as a special condition of parole/probation, to participate in and satisfactorily complete residential reentry programming," (*id.*), and as discussed herein, there is no dispute that Hegar was sent there as a parolee, not a prisoner. (ECF No. 38-10.)

515 U.S. at 484, 487.

> iii.   *Hegar's Chain of Custody and Hearing Challenges Do Not Constitute Viable Independent Due Process Causes of Action*

Hegar also argues that he was denied due process by the alleged defective chain-of-custody procedure Lucas used to collect his urine sample[6] and by the MDOC's hearing procedures, including its failure to retain the video evidence of Lucas's handling of the samples in question. (ECF No. 38, PageID.164.)  These claims lack merit.

First, as explained above, because the ultimate consequence to Hegar of the alleged chain-of-custody and hearing due process violations was serving a portion of his parole at the DRC instead of in the community, they necessarily did not result in him suffering an "atypical and significant hardship."  *Sandin*, 515 U.S. at 484.

Second, the law is clear that Hegar had no due process right to an "air tight" test sample chain of custody.  *Baker v. Kassulke*, 959 F.2d 233, *1 (6th Cir. 1992).  In *Baker*, the prisoner-plaintiff alleged "a violation of her right to due process resulting from the random collection of a urine sample and subsequent disciplinary hearing."  *Id*.  The district court *sua sponte* dismissed Baker's claims against the prison officers, leaving only a claim against the Warden.  *Id*.  The district court subsequently granted summary judgment to the Warden, and Baker appealed.  *Id*. The court held that Baker was not denied due process, reasoning:

> [Plaintiff] is not constitutionally entitled to an "air tight" chain of custody. This court has held that "the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectible 'property' or 'liberty' interest be so comprehensive as to

---

[6] Hegar's complaint actually includes "violating the chain of custody" procedures as part of his Eighth Amendment claim, rather than as one of specific "due process rights" he claims were violated in his Fourteenth Amendment claim.  (ECF No. 29, PageID.118-19.)  However, in his summary judgment motion, Hegar more appropriately addresses this issue as part of his due process claim.  (ECF No. 38, PageID.164) (discussing "chain of custody claim" as part of his due process claim.)  The Court will, as well.

preclude the possibility of error.  The requirements of due process are satisfied if *'some evidence'* supports the decision by the prison disciplinary board.

*Id*. (emphasis added).

Similarly, in *Higgs v. Bland*, the Sixth Circuit stated "[a]lthough plaintiffs introduced evidence that indicated some lapses in the chain-of-custody, 'the Due Process Clause has never been construed to require that the procedures used to guard against an erroneous deprivation of a protectable property or liberty interest be so comprehensive as to preclude any possibility of error.'"  *Higgs v. Bland*, 888 F.2d 443, 449 (6th Cir. 1989).

The foregoing case law makes clear that even crediting the facts supporting Hegar's test tube chain-of-custody argument – including that Lucas left urine samples uncovered and unattended on a ledge in the control center, used the wrong forms for processing the samples, and placed incorrect labels on the samples (ECF No. 29, PageID.113-14) – he merely showed suboptimal chain-of-custody procedures, and not that Officer Marutiak issued a decision that was not based on at least "some evidence."

Nor is a due process claim created merely because the MDOC failed to preserve the allegedly exculpatory video evidence when Hegar contends its "retention policy" required it to do so and/or that he timely requested it.  (ECF No. 38, PageID.158.)  "The requirements of procedural due process are defined by the United States Constitution, not by an agency's internal regulations or guidelines.  [] Thus, an agency's alleged failure to adhere to its own policies or guidelines does not state a due process claim.  []  That is because prison regulations are 'primarily designed to guide correctional officials in the administration of a prison.  [They are] not designed to confer rights on inmates....'"  *Boyd v. Butler*, No. 6:16-CV-27-GFVT, 2016 WL 4718147, at *4 (E.D. Ky. Sept. 7, 2016) (internal citations omitted).

Moreover, in *Davis-Stone v. Edwards*, No. 20-CV-11529, 2020 WL 5095519, at *2 (E.D.

Mich. Aug. 28, 2020), the court recently explained:

> Plaintiff's claim that Defendant Kelly failed to view the videotape, which Plaintiff claimed would have been exculpatory, fails to state a due process violation.  There is no due process requirement that a prison disciplinary board consider all available evidence.  *See Superintendent, Massachusetts Correctional Institution, Walpole v. Hill*, 472 U.S. 445, 455–56 (1985).  There is also no specific requirement that a hearings officer review video surveillance evidence.  *See Harvey v. Wilson*, 2011 WL 1740141, at *10 (E.D. Ky. May 5, 2011) (holding that the failure to review video footage as part of a disciplinary proceeding does not constitute a due process violation unless the decision was not supported by "some evidence"); *see also McKeithan v. Beard*, 322 F. App'x 194, 201 (3d Cir. 2009) ("The videotape and photographs at most constitute potentially exculpatory evidence, which prison officials have no constitutional obligation to preserve or consider.").  Plaintiff fails to show a due process violation.

*Davis-Stone*, 2020 WL 5095519, at *2; *see also Beck v. Hemingway*, No. 19-CV-13182, 2020 WL 4346957, at *3 (E.D. Mich. July 29, 2020) ("Moreover, ***even if Beck requested and was denied video evidence***, he was not denied due process under *Wolff* or *Hill*.  There is no due process requirement that a DHO consider all available evidence.  *See Hill*, 472 U.S. at 455-56.  There is also no specific requirement that the DHO review video surveillance evidence.  *See Harvey v. Wilson*, No. 6:10-CV-235, 2011 WL 1740141, at *10 (E.D. Ky. May 5, 2011) ("[T]he DHO decision not to review video tape evidence does not constitute a denial of due process under *Hill* and *Wolff*."); *see also McKeithan v. Beard*, 322 F. App'x 194, 201 (3d Cir. 2009) ("The videotape and photographs at most constitute potentially exculpatory evidence, which prison officials have no constitutional obligation to preserve or consider.")) (emphasis added).

For all of the foregoing reasons, these particular due process claims of Hegar's fail.

### iv.   The State Court Decision Has No Preclusive Effect Against Lucas

Finally, the Court addresses Hegar's collateral estoppel argument.  Specifically, Hegar argues, "This Court is to give preclusive effect to the findings of fact by the Ingham Circuit Court that there was a lack of substantial evidence to support a guilty finding misconduct of substance

abuse and that "'Lucas's testimony appears to be untruthful . . .' as to that series of events." (ECF No. 43, PageID.280) (ellipses in Hegar's brief.)  This argument lacks merit.

In *McCormick v. Braverman*, 451 F.3d 382, 397 (6th Cir. 2006), the Sixth Circuit explained:

> The Full Faith and Credit Act, 28 U.S.C. § 1738, requires the federal courts to give state court judgments the same preclusive effect that the state would afford such judgments.  []  Michigan has three requirements for collateral estoppel: "(1) 'a question of fact essential to the judgment must have been actually litigated and determined by a valid and final judgment'; (2) 'the same parties must have had a full [and fair] opportunity to litigate the issue'; and (3) 'there must be mutuality of estoppel.'"

*McCormick*, 451 F.3d at 397 (internal citations omitted).

Hegar fails to satisfy the second element because he has not shown that Lucas had a full and fair opportunity to litigate the issue.  Nothing in Judge Jamo's decision indicates that Lucas had been made a party to that case, and Judge Jamo indicated that his review was "confined to the record" below.  (ECF No. 38-2, PageID.176) (citing MCL 791.255(4)).  To that end, the Court notes that although Lucas submitted a testimonial statement in connection with Hegar's misconduct hearing, Lucas did not write the misconduct charge against Hegar.  Rather, Lieutenant Lisa Bozung authored the Class I Misconduct Report.  (ECF No. 38-7.)  As such, the state court analyzed whether substantial evidence supported *Officer Marutiak's* decision as to *Bozung's* charge.  Lucas, although the focus of Judge Jamo's decision, did not have a full and fair opportunity to litigate his credibility or any other aspect of Judge Jamo's decision.  (ECF No. 38-2.)

Moreover, Hegar's argument overstates Judge Jamo's decision.  Far from reaching a clear and unequivocal determination that Lucas knowingly lied in his written disciplinary hearing testimony, Judge Jamo qualified his finding by specifically leaving open the possibility that any inaccuracy in Lucas's testimony had been unintentional, writing, "C/L Lucas's testimony appears

to be untruthful (whether intentionally or not)."  (ECF No. 38-2, PageID.177-78.)  In his brief, however, Hegar omitted this important parenthetical in favor of an ellipses.

For all of the above reasons, Lucas is entitled to dismissal and/or summary judgment with respect to Hegar's due process claims.  Accordingly, Lucas's dispositive motion (ECF No. 40) should be granted as to those claims and Hegar's dispositive motion (ECF No. 38) should be denied.

B.     *Hegar's Eighth Amendment Claim Fails*

Hegar argues that his Eighth Amendment right to be free from cruel and unusual punishment was violated "by being forced to spend seven additional months in confinement at the Detroit Reentry Facility."  (ECF No. 38, PageID.167.)  This claim fails for a few reasons.

The Supreme Court has held that when there is an explicit source of a constitutional protection, then that claim should be analyzed under that Amendment.  *See Albright v. Oliver*, 510 U.S. 266, 273 (1994); *Graham v. Connor*, 490 U.S. 386, 395 (1989).  The explicit constitutional protection in this case is the right to due process prior to the deprivation of a life, liberty or property intertest under the Fourteenth Amendment.  *See Hahn, supra*.  This makes sense because, whereas Hegar alleges that Lucas was directly involved in the testing procedures and disciplinary hearing testimony that underscore his due process claim, Hegar does not allege that Lucas was involved in the decision to have Hegar serve part of his parole at the DRC.  Indeed, the undisputed evidence shows that it was the Parole Board who made that decision.  Hegar's Eighth Amendment claim amounts to nothing more than a characterization of the *consequences* he suffered as a result of the alleged *due process violation*.  As such, Hegar's claim, to the extent he has one, is properly brought under the Fourteenth Amendment, and his Eighth Amendment claim should be dismissed.  *See Albright, supra*.

19

However, even on the merits, Hegar's Eighth Amendment claim fails.  Hegar argues, "[i]t is obvious that a person must be released at the end of his or her sentence . . . 'A lawless extension of custody is certainly unusual, and it is cruel in the sense of being imposed without any legal authority.'  This is what happened in Hegar's case."  (ECF No. 38, PageID.169) (quoting *Hankins v. Lowe*, 786 F.3d 603, 605 (7th Cir. 2015)).  But Hegar's premise is flawed.  As explained above, *see supra* at 14, Hegar was not held "in custody" beyond the end of his court-imposed sentence.  Rather, as Hegar admits (and as the evidence shows), he "***was paroled*** on March 22, 2018 ***to the Detroit Reentry Center*** . . ."  (ECF No. 29, PageID.117) (emphasis added.)

For all of the above reasons, Lucas is entitled to dismissal and/or summary judgment with respect to Hegar's Eighth Amendment claim.  Accordingly, Lucas's dispositive motion (ECF No. 40) should be granted as to that claim and Hegar's dispositive motion (ECF No. 38) should be denied.

## IV.    Conclusion

For the reasons stated above, the Court **RECOMMENDS** that Hegar's Motion for Partial Summary Judgment as to Liability (**ECF No. 38**) be **DENIED**, Lucas's Motion for Summary Judgment (**ECF No. 40**) be **GRANTED**, and this case be **DISMISSED**.

Dated: April 19, 2021                              s/David R. Grand
Ann Arbor, Michigan                          DAVID R. GRAND
                                                           United States Magistrate Judge

## <u>NOTICE TO THE PARTIES REGARDING OBJECTIONS</u>

The parties to this action may object to and seek review of this Report and Recommendation, but are required to act within fourteen (14) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and Fed.R.Civ.P. 72(b)(2).  Failure to file specific objections

constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Secretary of HHS*, 932 F.2d 505, 508 (6th Cir.1991); *United States v. Walters*, 638 F.2d 947, 949–50 (6th Cir.1981).  The filing of objections which raise some issues, but fail to raise others with specificity, will not preserve all the objections a party might have to this Report and Recommendation.  *Willis v. Secretary of HHS*, 931 F.2d 390, 401 (6th Cir.1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir.1987).  Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.  A party may respond to another party's objections within 14 days after being served with a copy.  *See* Fed. R. Civ. P. 72(b)(2); 28 U.S.C. §636(b)(1).  Any such response should be concise, and should address specifically, and in the same order raised, each issue presented in the objections.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record via email addresses the court has on file.

s/Eddrey O. Butts
EDDREY O. BUTTS
Case Manager

Dated:  April 19, 2021

21